UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

LUIS M. RIVERA,

    Plaintiff,

v.   Case No.  5:24-cv-25-MCR-MJF

RON DESANTIS, *et al.*,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Luis M. Rivera, a federal prisoner proceeding *pro se* and *in forma pauperis*, has filed a civil rights complaint. Doc. 1. The undersigned recommends that this case be dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b), because Rivera's complaint is a "shotgun pleading" and fails to state a claim on which relief can be granted.

### I.  Rivera's Complaint

Rivera is a federal prisoner housed at the Federal Correctional Institution in Mariana, Florida. Rivera's complaint names six Defendants: Ron DeSantis, the Governor of the State of Florida; Collette Peters, the Director of the Federal Bureau of Prisons; Jack Campbell, the

Page 1 of 17

Florida State Attorney; Georgia Cappelman, an Assistant State Attorney; Chuck Collins, an attorney in Monticello, Florida; and M. Castro, the Warden of FCI-Marianna. Doc. 1 at 2-3, 14. Rivera is suing the Defendants in their individual and official capacities. *Id.*

Rivera alleges that in 2015, he was indicted in the United States District Court for the Southern District of Florida for a RICO violation for his role in the South Florida Latin Kings. Doc. 1 at 15; *see also United States v. Rivera*, No. 0:15-cr-60094-JIC (S.D. Fla. May 5, 2015). Rivera pleaded guilty to the charge and was sentenced on January 22, 2016, to 151 months of imprisonment. Doc. 1 at 15; *see also Rivera*, No. 0:15-cv-60094, Doc. 464 (Plea Agreement), Doc. 627 (J.).

In June 2016, Rivera was indicted in the Circuit Court for Leon County, Florida for the First-Degree Murder of Daniel Markel. Doc. 1 at 15-16; *see also State of Florida v. Rivera*, No. 2016-CF-1581. Rivera's defense counsel was Chuck Collins. Doc. 1 at 16. Rivera pleaded guilty to Second-Degree Murder and was sentenced on October 4, 2016, to 19 years of imprisonment in the Florida Department of Corrections. Doc. 1 at 16; *see also Rivera*, No. 2016-CF-1581, Doc. 107 (Plea Agreement), Doc. 108

(Cooperation Agreement), Doc. 109 (J.). Rivera's state sentence was run concurrent with his federal sentence in Case No. 0:15-cr-60094. *Id.*

Rivera alleges that his state-court plea and cooperation agreements required him to testify at only one trial (that of his co-defendant Sigfredo Garcia), and that the agreements promised Rivera that (1) "his life would be protected in Prison," (2) he "would be placed in a Protected Facility Environment," and (3) "the Court would control the News, Film, Newspaper Reporters, and Media Coverage" of any trial at which Rivera testified. Doc. 1 at 16-17. The agreements themselves, which Rivera signed, contain no such limitations. *See* Doc. 7, Attach. 1 (Plea Agreement); Doc. 7, Attach. 2 (Cooperation Agreement).[1]

---

[1] Both documents, which are referenced in Rivera's complaint and are central to his claims, were downloaded from the website for the Clerk of the Leon County Circuit Court, who is the public officer responsible for maintaining records of the Leon County Circuit Court. A district court, at the dismissal stage, may take judicial notice of relevant public documents. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999); *see also Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013) ("Although this matter is before the court on a motion to dismiss, we may take judicial notice of the court documents from the state eviction action.").

Rivera alleges that after testifying against Garcia, Rivera was attacked by an inmate at the Federal Correctional Institution in Coleman, Florida. Doc. 1 at 17-18. The BOP then transferred Rivera to the Federal Correctional Institution in Tucson, Arizona. *Id*. at 18.

After Rivera testified at the trial of another individual charged with the Markel murder (Katherine Magbanua), Rivera filed a "Motion for Appointment of Counsel" in his state criminal case seeking the appointment of counsel to assist him "in an attempt to modify the terms of the Plea of Guilty and Cooperation Agreement for his own safety, and the safety of his family." Doc. 1 at 19. The state trial court denied the motion. *Id*. at 19.

Rivera wrote letters to the prosecutor (Cappelman) and his former defense counsel (Collins) voicing his safety concerns. Doc. 1 at 19.

On July 31, 2022, an inmate stabbed Rivera. The BOP transferred Rivera to FCI–Marianna where he remains confined. Doc. 1 at 19-20.

On October 27, 2023, Rivera was called to testify at a third trial related to the Markel murder. Doc. 1 at 20. That trial was "highly-publicized." *Id*.

Page 4 of 17

Based on the foregoing allegations, Rivera claims that "the Defendants," collectively, have been deliberately indifferent to his safety in violation of the Eighth Amendment. Doc. 1 at 20-23. Rivera explains that:

> The Defendants have . . . failed to move the Court to:
>
> 1. Place a Gag Order upon the Facts of this Matter;
>
> 2. Failed to limit the Filming and Publicity occurring in the Courtroom which was resulted in Petitioner's image being shown on all forms of Media Platforms across the Country and in Prison; and
>
> 3. Move the Courts and Judges involved in these ongoing cases to issue all needful Orders in regards to the Safety of the Petitioner and his Family; and
>
> 4. Move to have Counsel appointed for the Opening of Negotiations into "Witness Protection Issues" which have grown and multiplied with the amount of Cooperation and Jury Trial Petitioner has continued to Cooperate in; far outside the Original agreements made at the time of the Original Pro-Offer [sic], and far outside the Four Corners of the Original Plea and Cooperation Agreement.

Doc. 1 at 20-21. Rivera claims that the foregoing conduct also violates his rights under the Fifth, Sixth, and Fourteenth Amendments. *Id.* at 23.

Rivera seeks an injunction ordering "the Defendants" to enter into an agreement to house Rivera in federal custody to serve his state

Page 5 of 17

sentence once he serves the incarcerative portion of his federal sentence. Doc. 1 at 24. In addition, Rivera seeks an injunction requiring "the Defendants" to "open discussions for the purposes of:

> a. Appointment of Counsel for the Purposes of reopening a Review of the Plea Bargain Contract and Cooperation Terms and Agreements; and
>
> b. Placement of Petitioner in a Witness Protection Program, and possibly members of his family; and
>
> c. Resentencing Petitioner to a Coterminous Period of State of Florida Incarceration to be completed upon Petitioner's Satisfaction of his Federal Sentence and Completion of all Trials involving the Murder of Daniel Markel; and
>
> d. All other needful Orders promulgated by this Court in its Protection of Petitioner's Life."

Doc. 1 at 24-25.

## II.  FEDERAL PLEADING AND SCREENING STANDARDS

### A.  The Federal Pleading Standard

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8's standard "does not require detailed factual allegations, but it demands more than

an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).

Federal Rule of Civil Procedure 10 requires a party to state his claims "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "[E]ach claim founded on a separate transaction or occurrence . . . must be stated in a separate count." *Id*.

"'Shotgun pleadings' are complaints that violate federal pleading rules by 'fail[ing] to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'" *Beaulieu v. Powell*, No. 22-13796, 2023 WL 3302874, at *3 (11th Cir. May 8, 2023) (alteration in original) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015)); *see also* Fed. R. Civ. P. 8(a)(2) & 10(b). The Eleventh Circuit has identified "four rough types of shotgun pleadings." *Beaulieu* at *3:

> A complaint may qualify as a shotgun pleading if it (1) "contain[s] multiple counts where each count adopts the allegations of all preceding counts"; (2) is "replete with conclusory, vague, and immaterial facts not obviously

> connected to any particular cause of action"; (3) does not separate "each cause of action or claim for relief" into a different count; or (4) "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* At bottom, though, the issue is not one of form or pleading technicalities, but rather substance—that is, whether the complaint gives defendants fair "notice of the specific claims against them and the factual allegations that support those claims." *Id.* at 1325.

*Id.* at *3 (quoting *Weiland*, 792 F.3d at 1321-25).

## B.   Screening Standard under 28 U.S.C. §§ 1915(e)(2) and 1915A

Because Rivera is a prisoner and is proceeding *in forma pauperis*, this court is required to review his complaint, identify cognizable claims and dismiss the complaint, or any portion thereof, if the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)-(b); *see also* 28 U.S.C. § 1915(e)(2)(B) (comparable screening provision of *in forma pauperis* statute).

To prevent dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The mere possibility that the defendant acted unlawfully is insufficient. *Iqbal*, 556 U.S. at 678. The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," that is, "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

In applying the foregoing standard, the court accepts all well-pleaded factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). Mere "labels and conclusions," however, are not accepted as true. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Similarly, a pleading that offers "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### III. DISCUSSION

**A.** <u>**Rivera's Complaint Violates Federal Pleading Standards**</u>

Rivera's complaint is deficient under Rules 8 and 10, because it falls into most, if not all, of the rough types of shotgun pleadings described above. Rivera asserts multiple counts against "the Defendants" collectively, in their individual and official capacities, with each count adopting the allegations of every other count. Rivera does not specify which of the Defendants are responsible for which acts or omissions, or which of the Defendants the particular constitutional claim is brought against. Additionally, Rivera's complaint refers only to "the Defendants" collectively in describing a six-year series of events involving his state criminal trial, his testimony in other criminal trials, and inmate assaults during his confinement in the BOP, without specifying what any particular Defendant did or did not do that violated his rights. In short, the complaint does not give any individual Defendant fair notice of the specific claim against him or her, and the factual allegations that support the claim.

"A district court has the inherent authority to control its docket and ensure the prompt resolution of lawsuits, which includes the ability to dismiss a complaint on shotgun pleading grounds." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (quotation marks omitted).

### B. <u>Rivera's Complaint Fails to State a Plausible Claim for Injunctive Relief Against Any Named Defendant</u>

Rivera has filed this civil suit with the goals of: (1) compelling the BOP and the FDC to contract for Rivera to be housed in a federal prison to serve his state sentence; and (2) compelling "the Defendants" to "open discussions" about a range of topics, including appointing counsel to represent Rivera in "reviewing" his plea and cooperation agreements, placing Rivera in a witness protection program, and resentencing Rivera to a state sentence that is coterminous instead of concurrent with his federal sentence. Doc. 1 at 24-25.

To obtain injunctive relief, a plaintiff must establish (1) the violation of a right, (2) the existence of a serious risk of continuing irreparable injury from said violation if relief is not granted, and (3) no adequate remedy at law. *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir.

2000). Rivera's allegations do not plausibly establish that any named Defendant violated his rights under the Fifth, Sixth, Eighth, or Fourteenth Amendment.

As to Rivera's Eighth Amendment claims, Rivera has not described how Director Peters or Warden Castro has been deliberately indifferent to a substantial risk to his safety while housed in the BOP. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Cox v. Nobles*, 15 F.4th 1350, 1357-58 (11th Cir. 2021) (stating the elements of an Eighth-Amendment failure-to-protect claim). To the contrary, Rivera describes that when his safety has been threatened, he has been transferred to a different BOP facility. That does not suggest that Peters or Castro has acted with deliberate indifference to Rivera's safety.

With regard to the State prosecutors (Campbell and Cappelman), neither Campbell nor Cappelman has control over Rivera's confinement conditions at any correctional institution. Rivera suggests that their asking him to testify at multiple trials related to the Markel murder, combined with their failure to limit trial publicity, violates his right to be free from cruel and unusual punishment. Doc. 1 at 20. The prosecutors'

enforcement of the cooperation agreement, however, is not "totally without penological justification." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976). It is part of the plea bargain Rivera negotiated with the assistance of counsel—an agreement, Rivera emphasizes, he does not want to withdraw. *See* Doc. 1 at 22. Rivera, therefore, fails to state a plausible claim against Campbell and Cappelman for violation of the Eighth Amendment.[2]

Rivera's Sixth Amendment claims fare no better. Rivera alleges that after his state criminal proceeding concluded and he testified at the Garcia and Magbanua trials, he wrote his former defense counsel (Collins) informing him of threats to his life. Doc. 1 at 19. Rivera also filed an unsuccessful motion in his state criminal case seeking the appointment of counsel to assist him in future potential appearances as a State's witness. *Id*. These circumstances do not state a plausible basis to find a Sixth Amendment violation. Rivera has no constitutional right to postconviction counsel. *See Pennsylvania v. Finley*, 481 U.S. 551, 555

---

[2] If it is Rivera's contention that the State has breached the plea and cooperation agreements, his remedy is in the state courts, not federal court.

(1987); *Barbour v. Haley*, 471 F.3d 1222, 1227 (11th Cir. 2006) ("[T]his court has consistently held that there is no federal constitutional right to counsel in postconviction proceedings.").

Furthermore, Rivera has no federal statutory or constitutional right to serve his state sentence in a federal prison after his federal sentence expires. Federal and state law confer the authority to make those administrative placement decisions in the Director of the BOP and the Florida Department of Corrections. *See* 18 U.S.C. § 5003; Fla. Stat. § 921.16(2). Rivera does not have a liberty interest—subject to due-process protection—in serving his state sentence in a federal prison. *See Olim v. Wakinekona*, 461 U.S. 238 (1983) (prisoners have no right protected by the Due Process Clause to be confined in a particular state or in a particular prison); *Vitek v. Jones*, 445 U.S. 480, 489 (1980) ("In *Meachum v. Fano*, 427 U.S. 215 . . . (1976), and *Montanye v. Haymes*, 427 U.S. 236 . . . (1976), we held that the transfer of a prisoner from one prison to another does not infringe a protected liberty interest.").

Similarly, Rivera has no federal statutory or constitutional right under the Due Process Clause to be placed in the witness protection

program. Federal law confers the authority to make that administrative placement decision in the United States Attorney General. *See* 18 U.S.C. § 3521 (vesting in the Attorney General the discretionary authority to place a witness, a potential witness, or an immediate family member of same in the program); *see also* 18 U.S.C. § 3521(a)(3) ("The United States and its officers and employees shall not be subject to any civil liability on account of any decision to provide or not to provide protection under this chapter."). Neither the Due Process Clause, nor the Eighth Amendment confers on Rivera a constitutional right to be placed in a witness protection program. *See J.S. v. T'Kach*, 714 F.3d 99, 105 (2d. Cir. 2013) (prisoners do not have a constitutionally-protected interest in participating in the Justice Department's Witness Security Program).

### IV. SUMMARY

Rivera's complaint is a shotgun pleading and fails to state a claim on which relief can be granted as to any named Defendant. The undersigned outlined these deficiencies in the order dated April 8, 2024, and required Rivera to replead. Doc. 7. Rivera has not filed an amended complaint, nor has he responded to the show-cause order entered on June

24, 2024. Doc. 14. The District Court, therefore, is well within its discretion to dismiss the complaint. *See, e.g., Toth v. Antonacci*, 788 F. App'x 688 (11th Cir. 2019) (dismissing complaint because it was a shotgun pleading); *Beaulieu, supra* (dismissing complaint because it was a shotgun pleading and failed to state a claim on which relief can be granted).

## V. CONCLUSION

For the reasons stated above, the undersigned respectfully **RECOMMENDS** that:

1. This action be **DISMISSED** under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b), for failure to state a claim upon which relief may be granted.

2. The clerk of court be directed to enter judgment accordingly and close this case file.

At Panama City, Florida, this 24th day of July, 2024.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to make recommendations regarding dispositive matters.** *See* **28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the report and recommendation.** <u>Any different deadline that may appear on the electronic docket is for the court's internal use only.</u> **A party must serve a copy of any objections on all other parties. A party who fails to object to this report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636. The parties also are advised that if they dispute the accuracy of any judicially-noticed fact, or if they otherwise wish to be heard on the propriety of the court taking judicial notice of that fact, they must raise this issue in an objection to this report and recommendation.**